IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>                                                          )<br>            Plaintiff,                       )<br>                                                          )<br>vs.                                                    )<br>                                                          )<br>OSCAR FAVELA-LUJAN,              )<br>                                                          )<br>                                                          )<br>            Defendant.                    ) | No. CR 10-3232 RB |

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** came before the Court on Defendant's Motion in Limine (Doc. 22), filed on January 13, 2011, and Defendant's objection the United States' Notice of Intention to Offer Expert Testimony, (Doc. 30), filed on January 18, 2011. The Court held a hearing on these matters on January 20, 2011. Having considered the arguments of counsel, relevant law, and being otherwise fully advised, the Court rules as follows.

**I.      Background.**

The Indictment, filed on November 18, 2010, charges Defendant Oscar Favela-Lujan with: (1) importation of marijuana, in violation of 21 U.S.C. §§ 952(a)(1) and(b)(3), and aiding and abetting in violation of 18 U.S.C. § 2; and (2) possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and aiding and abetting in violation of 18 U.S.C. § 2. Trial is set for January 24, 2011.

**II.     Factual Allegations.**

According the United States, on November 5, 2010, at approximately 9:15 a.m., Mr. Favela drove a 1999 Chevrolet pick up truck bearing Mexican plates into the Santa Teresa Port of Entry, from the Republic of Mexico. (Doc. 1.) After Mr. Favela was referred to the secondary inspection

area, approximately 111 bundles of marijuana were found hidden in the vehicle.  (*Id.*)  The total combined weight of the marijuana was 118.5 pounds.  (*Id.*)

Approximately four hours later, Mr. Favela gave a statement to ICE Special Agent Stephani Mendoza and Supervisory Special Agent Monika Weyler.  (Doc. 1.)  Mr. Favela recounted that he had responded to a newspaper advertisement for a job.  (*Id.*)  An individual who identified himself as Jesus Hernandez hired Mr. Favela to run errands for "the boss."  (*Id.*)  On Wednesday, November 3, 2010, Mr. Favela began work and drove with a fellow employee through the Santa Teresa Port of Entry.  (*Id.*)  The other employee drove Mr. Favela to locations in El Paso, Texas, where Mr. Favela would be required to buy supplies for the business.  (*Id.*)  These locations included Lowe's, Home Depot, and Wal-Mart in El Paso.  (*Id.*)  On November 5, 2010, when Mr. Favela arrived at work, his supervisor directed him to drive the truck to Lowe's in El Paso and then to a gas station to buy water and sodas.  (*Id.*)  Mr. Favela was apprehended as he entered the United States at the Santa Teresa Port of Entry.

At the time of his arrest, Mr. Favela had in his wallet a Spanish prayer to the Santa Muerte, or Holy Death.  (Doc. 30.)  The United States has attached a copy of the prayer, as well as an English translation, to its Notice of Intent to Offer Expert Testimony.  (Doc. 30, Govt Exs. C-1 and C-2.)

On January 18, 2011, the United States filed a Notice of Intent to Offer Expert Testimony.  (Doc. 30.)  Therein, the United States identified two expert witnesses: (1) ICE Special Agent Eddie Pacheco on the value of the marijuana as well as an a overview of the business and economics of marijuana trafficking; and (2) New Mexico State Police Sergeant Nick Ramos on how drug organizations rely on the Santa Muerte to protect them from law enforcement.  (*Id.*)

**III.    Summary of Arguments.**

Mr. Favela seeks to exclude (1) any discussion of the Santa Muerte, and (2) the testimony of other individuals arrested at the Home Depot parking lot in El Paso for carrying marijuana who claimed to have worked for the same person as Mr. Favela. As grounds, Mr. Favela contends that any probative value of such evidence is substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid 403. At the hearing of January 20, 2011, Mr. Favela objected to the United States' disclosure of expert witness testimony.

**IV.    Discussion.**

The term relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "The bar for admission under Rule 401 is very low. This is because the degree of materiality and probativity necessary for evidence to be relevant is minimal and must only provide a fact-finder with a basis for making some inference, or chain of inferences." *United States v. Jordan*, 485 F.3d 1214, 1218 (10th Cir. 2007) (citation and quotations omitted).

The low threshold for relevancy set out in Rule 401 is tempered by Rule 403, which provides that although relevant, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading to the jury." Fed. R. Evid. 403. Such circumstances might arise when evidence suggests to the jury that it should "render its findings on an improper basis, commonly . . . an emotional one," and when "circumstantial evidence would tend to sidetrack the jury into consideration of factual disputes only tangentially related to the facts at issue in the current case." *Jordan*, 485 F.3d at 1218 (internal quotes and citations omitted).

The Tenth Circuit has explained:

> Unfair prejudice in the Rule 403 context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one. The district court has considerable discretion in performing the Rule 403 balancing test. However, exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly.

*United States v. Tan*, 254 F.3d 1204, 1211 (10th Cir. 2001).

The importation charge requires that the United States prove, *inter alia*, that Mr. Favela knew the substance he brought into the United States was marijuana. *See* Tenth Circuit Pattern Jury Instructions, Criminal § 2.90. The possession with intent to distribute charge requires the United States to prove, *inter alia*, that Mr. Favela knowingly or intentionally possessed the marijuana with intent to distribute. *See* Tenth Circuit Pattern Jury Instructions, Criminal § 2.85. Simply put, Mr. Favela's knowledge of the marijuana hidden in the truck will be the key issue at trial.

The Eighth Circuit has recognized that the Santa Muerte is "commonly used by drug traffickers for protection." *United States v. Pena-Ponce*, 588 F.3d 579, 582 (8th Cir. 2009) (affirming the denial of a motion to suppress where evidence of the Santa Muerte was admitted at a suppression hearing through the testimony of a state trooper). The Tenth Circuit has stated, in unpublished decisions, that Jesus Malverde[1] is considered a patron saint by some drug traffickers. *United States v. Lopez-Gutierrez*, 334 Fed. Appx. 880 (10th Cir. 2009) (unpublished); *United States v. Briseno*, 163 Fed. Appx. 658 (10th Cir. 2006) (unpublished). In that these authorities demonstrate that cultural icons such as the Santa Muerte and Jesus Malverde are associated with drug smugglers, evidence of the prayer to the Santa Muerte would be highly relevant to the issue of knowledge.

Mr. Favela has identified no unfair prejudice that would result from admission of evidence

---

[1] For a discussion of the Santa Muerte and Jesus Malverde, please see *Mexican Saints, Troubled Sprirts,* National Geographic Magazine, http://ngm.nationalgeographic.com/2010/05.

4

of the Santa Muerte. Notably, the Eighth Circuit has determined that the admission of evidence of Jesus Malverde at trial was not unfairly prejudicial. *United States v. Flores*, 362 F.3d 1030, 1041 (8th Cir. 2004). In that case, law enforcement officers testified that Jesus Malverde is known as the patron saint of drug traffickers, or "bandits". *Id*. Both the district court in *Flores* and the Eighth Circuit determined that admission of testimony regarding the significance of an icon used by drug traffickers would not be unfairly prejudicial in a drug trafficking case. Additionally, *Flores* indicates that the testimony of a law enforcement officer is a proper vehicle for the introduction of such evidence. *Flores*, 362 F.3d at 1041. In that the high probative value of the evidence is not substantially outweighed by the danger of unfair prejudice, Rule 403 does not provide a basis for exclusion.

At the hearing, Mr. Favela objected to the United States' disclosure of expert witness testimony. As an initial matter, Mr. Favela contends that the disclosure of Sergeant Ramos, on January 18, 2011, does not allow Mr. Favela sufficient time to secure an expert to refute the testimony of Sergeant Ramos on the Santa Muerte. Mr. Favela opposes a trial continuance. At the hearing, counsel for Mr. Favela agreed to use his best efforts to secure a defense expert witness prior to trial. If Mr. Favela is unable to secure such a witness, the United States has agreed not to introduce evidence of the Santa Muerte.

Additionally, Mr. Favela objected to the qualifications of Sergeant Ramos to testify as an expert on the use of the Santa Muerte by persons involved in the drug trade. The Court reserves ruling on this issue until such time as the United States decides whether to introduce evidence of the Santa Muerte and subject to Sergeant Ramos being qualified appropriately.

At the hearing of January 20, 2011, Mr. Favela objected to the expert testimony of Special Agent Pacheco on the grounds that his testimony may invade the province of the jury. The Tenth

Circuit allows law enforcement agents to provide expert testimony concerning the drug trade under Rule 702.  *See, e.g., United States v. Quintana*, 70 F.3d 1167, 1170-71 (10th Cir. 1995) (meaning of drug code); *United States v. Sturmoski*, 971 F.2d 452, 459 (10th Cir. 1992) (tools of the drug trade); *United States v. McDonald*, 933 F.2d 1519, 1520-23 (10th Cir. 1991) (significance of quantity of cocaine, tools of drug trade, and use of food stamps to purchase crack cocaine); *United States v. Harris*, 903 F.2d 770, 775-76 (10th Cir. 1990) (drug records).  Accordingly, the Court generally allows law enforcement agents to testify as to the significance of drug quantity, the monetary value of drugs, and the workings of drug distribution organizations, but not concerning any conclusion that an individual qualifies as a participant in drug-related conduct.

The significance of this distinction is underscored by Federal Rule of Evidence 704, which provides:

> (a) Except as provided in subdivision (b), testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.
>
> (b) No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto.  Such ultimate issues are matters for the trier of fact alone.

Fed. R. Evid. 704(b).

"Rule 704(b) only prevents experts from expressly stating the final conclusion or inference as to a defendant's actual mental state. The rule does not prevent the expert from testifying to facts or opinions from which the jury could conclude or infer the defendant had the requisite mental state." *United States v. Richard*, 969 F.2d 849, 854-55 (10th Cir. 1992).  So long as Special Agent Pacheco's testimony does not entail facts or opinions from which the jury could conclude or infer that Mr. Favela had the requisite mental state, and does not make that inference or conclusion for

the jury, his testimony would not violate Rule 704(b).

Specifically, Special Agent Pacheco may testify as to the significance of the quantity of the marijuana, the value of the marijuana, and marijuana distribution organizations in general. However, Special Agent Pacheco may not make an inference or conclusion as to whether Mr. Favela shares characteristics with participants in a drug distribution organization or scheme.

In his Motion in Limine, Mr. Favela moved to exclude the testimony of other individuals arrested at the Home Depot parking lot in El Paso for carrying marijuana who claimed to have worked for the same person as Mr. Favela. At the hearing, counsel did not mention this request. In its witness list, filed on January 19, 2011, the United States lists law enforcement officers only. (Doc. 24.) Thus, it appears that the United States does not intend to offer testimony from a person arrested in the Home Depot parking lot in its case-in-chief. The question of whether such evidence would be relevant in rebuttal will depend on Mr. Favela's trial presentation. For this reason, the Court reserves ruling on this issue until trial.

**IT IS SO ORDERED.**

_____
**ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE**